1  Benjamin M. Lopatin, Esq.
2  Cal. Bar No. 281730
   Email: blopatin@elplawyers.com
3  EGGNATZ, LOPATIN & PASCUCCI, LLP
   1425 Irving Street
4  San Francisco, CA 94122
   Tel: (415) 379-4612
5  Fax: (415) 520-2262

6  CK Lee, *to be admitted pro hac vice*
7  30 East 39th Street, Second Floor
   New York, NY 10016
8  Tel.: 212-465-1188
   Fax: 212-465-1181
9  cklee@leelitigation.com

10 Attorneys for Plaintiffs and the Proposed Class

11                    UNITED STATES DISTRICT COURT
12                   CENTRAL DISTRICT OF CALIFORNIA
13                         SOUTHERN DISTRICT
14

15 | CAIRO, SEDALE ADAMS, ASAIAH SQUITIERI and JOHN DOES 1-100, on behalf of themselves and others similarly situated, | Case No.:  8:17-cv-137 |
16 | | **CLASS ACTION COMPLAINT** |
17 | Plaintiffs, | **Jury Trial Requested** |
18 | v. | |
19 | QUEST NUTRITION, LLC, | |
20 | Defendant. | |

21      Plaintiffs SEDALE ADAMS, ASAIAH SQUITIERI, [N.F.N.] CAIRO, and JOHN DOES 1-100,
22 individually and on behalf of all other persons similarly situated, by and through their undersigned
23 attorneys, as and for their Complaint against the Defendant, allege the following based upon personal
24 knowledge as to themselves and their own action, and, as to all other matters, respectfully allege, upon
25 information and belief, as follows (Plaintiffs believe that substantial evidentiary support will exist for the
26 allegations set forth herein after a reasonable opportunity for discovery):
27
28

## NATURE OF THE ACTION

1.      This is a consumer protection action arising out of deceptive and otherwise improper business practices that Defendant, QUEST NUTRITION, LLC (hereinafter "QUEST" or "Defendant"), engages in with respect to the packaging of their 2 lb. containers of QUEST® protein powder (the "Products"). The Products are uniformly sold in non-transparent plastic cylinders that contain mostly empty space, and all flavors are packaged with the same small quantity of protein powder per container. The Products are marketed extensively throughout the United States and are available at numerous retail and online outlets such as GNC, Vitamin Shoppe, and Amazon.com, as well as on Defendant's online store at http://www.questnutrition.com/protein-powders/.

2.      The Products are sold in the following flavors:

- Cookies & Cream Protein Powder
- Salted Caramel Protein Powder
- Banana Cream Protein Powder
- Chocolate Milkshake Protein Powder
- Vanilla Milkshake Protein Powder
- Peanut Butter Protein Powder
- Strawberries & Cream Protein Powder
- Multi-Purpose Mix Protein Powder

3.      Defendant manufactures, markets and sells the Products with non-functional slack-fill in violation of the Federal Food Drug & Cosmetic Act ("FDCA") Section 403(d) (21 U.S.C. 343(d)), the Code of Federal Regulations Title 21 part 100, *et. seq.*, as well as state laws prohibiting misbranded food of the fifty states and the District of Columbia, which impose requirements identical to federal law.

4.      Upon information and belief, Defendant sold and continues to sell the Products with non-functional slack-fill during the class period.

5.      Images of the Products in various flavors are provided herein under **EXHIBIT A**. The Products are invariably packaged in non-transparent wrappings so that Plaintiffs and Class members cannot see the slack-fill in the container. The Products are sold in plastic cylinders 11 inches tall and 17

¼ inches in circumference manufactured by Priority Plastics Inc., with 10 ¾ inches of vertical space available internally.

6.      The size of the plastic containers in comparison to the volume of the Products contained therein makes it appear as though Plaintiffs and Class members are buying more than what is actually being sold. For example, a two pound container of QUEST® Protein Powder contains mostly empty space. The product in the container occupies less than half of the total available space – only 5 ¼ inches, compared to 5 ½ inches of air. *See* **EXHIBIT B**.



APPROXIMATE
LINE OF FILL

1

7.      The slack-fill in the Products is far in excess of the air or slack-fill found in competing

2    products. For example, Epiq™ Isolate Protein is also sold in cylindrical containers that are 11 inches tall

3    (with 10 ¾ inches of vertical space internally) and 17 ¼ inches in circumference, but each container has

4    three and one-third pounds of product, which is 66% more than is in the QUEST® containers. Epiq™

5    Isolate Protein containers have 7 ½ inches of product and only 3 ¼ inches of air, and so they are 70% full.

6    *See* **EXHIBIT C**.

7

8

9    

10

11

12

13

14

15

16

17

18

19

20

8.      Competitors selling two pound batches of protein powder use smaller containers. For

21    example, EAS® Whey + Casein Protein Powder is sold in containers that are 8 ½ inches tall (with 8 ¼

22    inches of vertical space internally) and 15 ½ inches in circumference, which is 2 ½ inches shorter and 1

23    ¾ inches less in circumference as compared to the QUEST® Product containers. EAS® Whey + Casein

24    Protein Powder containers have 6 ¾ inches of product and only about 1 ½ inches of air, making them well

25    over 80% full. *See* **EXHIBIT D**.

26

27

28

9.      As with QUEST® protein powder, each container of EAS® protein contains two pounds of product. These containers are manufactured by Priority Plastics Inc., the same company that manufactures QUEST® protein powder containers. The only reason Defendant purchases and uses oversized containers is to mislead consumers about the quantity of protein powder within each Product.

10.      Plaintiffs and Class members viewed Defendant's misleading Product packaging, and reasonably relied in substantial part on the Product packaging's implicit representations of volume when purchasing the Products. Plaintiffs and Class members were thereby deceived in deciding to purchase the Products for a premium price.

11.      Plaintiffs bring this proposed consumer class action on behalf of themselves and all other persons nationwide, who from the applicable limitations period up to and including the present (the "Class Period"), purchased the Products for consumption and not for resale.

12.     During the Class Period, Defendant manufactured, marketed and sold the Products throughout the United States. Defendant purposefully sold the Products with non-functional slack-fill.

13.     Defendant violated statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes are:

a.     Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*

b.     Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.;*

c.     Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*

d.     Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*

e.     California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*

f.     Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*

g.     Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.;*

h.     Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*

i.     District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*

j.     Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*

k.     Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*

l.     Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, *et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*

m.     Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*

n.     Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*

*o.*    Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*

*p.*    Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*

*q.*    Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*

*r.*    Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*

*s.*    Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.;*

*t.*    Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*

*u.*    Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*

*v.*    Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

*w.*    Michigan Consumer Protection Act, § § 445.901, *et seq.;*

*x.*    Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*

*y.*    Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*

*z.*    Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*

*aa.*    Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*

*bb.*    Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*

*cc.*    Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*

*dd.*    New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq. ;*

*ee.*    New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 *1, et seq.;*

*ff.*    New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 *1, et seq. ;*

gg.   New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.*;

hh.   North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.*;

ii.   North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.*;

jj.   Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.*;

kk.   Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

ll.   Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

mm.   Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.*;

nn.   Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

oo.   South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

pp.   South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.*;

qq.   Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.*;

rr.   Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et seq.*;

ss.   Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.*;

tt.   Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.*;

uu.   Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.*;

vv.   Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.*;

ww.   West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

xx.   Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.*;

yy.   Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

14.     Defendant has deceived Plaintiffs and other consumers nationwide by misrepresenting the volume of their Products, inducing Plaintiffs and Class members to reasonably rely on Defendant's misrepresentations and purchase Products they would not have purchased otherwise. Defendant has been unjustly enriched as a result of their conduct. Through these unfair and deceptive practices, Defendant has collected millions of dollars from the sale of their Products that they would not have otherwise earned. Plaintiffs bring this action to stop Defendant's misleading practice.

15.     Plaintiff expressly does not seek to contest or enforce any state law that has requirements beyond those required by federal laws or regulations.

## JURISDICTION AND VENUE

16.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

17.     The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C § 1331 because they arise under the laws of the United States.

18.     The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

19.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

20.     The Court has personal jurisdiction over Defendant because their Products are designed, manufactured, advertised, marketed, distributed and sold throughout California State; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in California, its headquarters; Defendant is authorized to do business in California State; and Defendant has sufficient

minimum contacts with California and/or otherwise have intentionally availed themselves of the markets in California, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within California.

21.     Venue is proper in this district pursuant to 28 U.S.C § 1391(a) and (b) because a substantial part of the events giving rise to Plaintiff CAIRO's claims occurred in this District, and Defendant is subject to personal jurisdiction in this District. Plaintiff CAIRO purchased Defendant's Products in Orange County. Moreover, Defendant distributed, advertised and sold the Products, which are the subject of the present Complaint, in this District.

## PARTIES

### California Plaintiff

22.     Plaintiff CAIRO is, and at all relevant times hereto has been a citizen of California and resides in Orange County, California. On September 14, 2016, Plaintiff CAIRO purchased the two pound Salted Caramel QUEST® Protein Powder Product from a GNC store in Los Angeles, California located at 8907 S. Sepulveda Blvd. CAIRO purchased the Product at a premium price of $39.99 and was financially injured as a result of Defendant's deceptive conduct as alleged herein. Had Plaintiff CAIRO known the truth about Defendants' misrepresentations, she would not have purchased the premium priced Product and would have purchased less expensive protein powder products. Further, should Plaintiff CAIRO encounter the Products in the future, she could not rely on the truthfulness of the packaging, absent corrective changes to the packaging. However, Plaintiff CAIRO would still be willing to purchase the Product, absent the price premium,  as long as Defendants engage in corrective advertising.

### NY Plaintiff

23.     Plaintiff SQUITIERI is, and at all relevant times hereto has been a citizen of the state of New York and resides in New York County. On September 8, 2016, Plaintiff SQUITIERI purchased the

two pound Chocolate Milkshake QUEST® Protein Powder Product for personal consumption within the State of New York. Plaintiff SQUITIERI purchased the Product at a GNC store in Manhattan County, New York located at 302 Canal St. Plaintiff SQUITIERI purchased the Products for the premium price of $44.99, and was financially injured as a result of Defendant's deceptive conduct as alleged herein.

24.     Had Plaintiff SQUITIERI known the truth about Defendants' misrepresentations, he would not have purchased the premium priced Product and would have purchased less expensive protein powder products. Further, should Plaintiff SQUITIERI encounter the Product in the future, he could not rely on the truthfulness of the packaging, absent corrective changes to the packaging. However, Plaintiff SQUITIERI would still be willing to purchase the current formulation of the Products, absent the price premium, so long as Defendants engage in corrective packaging.

*Illinois Plaintiff*

25.     Plaintiff ADAMS is, and at all relevant times hereto has been a citizen of Illinois and resides in Cook County, Illinois. On October 6, 2016, Plaintiff ADAMS purchased the two pound Chocolate Milkshake QUEST® Protein Powder Product from a Vitamin Shoppe health food store in Cook County, Illinois located at 1303 North Milwaukee Ave. ADAMS purchased the Product at a premium price of $38.99 and was financially injured as a result of Defendant's deceptive conduct as alleged herein.

*Other Plaintiffs*

26.     Plaintiffs JOHN DOES 1-100 are, and at all times relevant hereto has been, citizens of any of the fifty states and the District of Columbia. During the Class Period, Plaintiffs JOHN DOES 1-100 purchased Products for personal consumption within the United States. Plaintiffs purchased the Products at a premium price and were financially injured as a result of Defendant's deceptive conduct as alleged herein.

*Defendant*

27.     Defendant QUEST NUTRITION, LLC is a corporation organized under the laws of Delaware with its headquarters at 2221 Park Place, El Segundo, CA 90245 and an address for service of process at 32 W. Loockerman St., Ste. 107, DOVER, DE 19904. Defendant manufactured, packaged, distributed, advertised, marketed and sold the misbranded Products to millions of customers nationwide, including in Illinois, New York, and California.

28.   Defendant distributes, markets and sells its protein powder throughout the fifty states and the District of Columbia. The labeling, packaging, and advertising for the Products, relied upon by Plaintiffs, were prepared and/or approved by Defendant and its agents, and were disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. Such labeling, packaging and advertising were designed to encourage consumers to purchase the Products and reasonably misled the reasonable consumer, i.e. Plaintiffs and the Class, into purchasing the Products. Defendant owned, marketed and distributed the Products, and created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive labeling, packaging and advertising for the Products.

## **FACTUAL ALLEGATIONS**

**Identical Federal and State Law Prohibit Misbranded Foods with Nonfunctional Slack-Fill**

29.     Federal law, agency regulation, and state law all identically prohibit Defendant's misleading packaging practices.

30.     Under the FDCA, 21 U.S.C. § 343(d), a food shall be deemed to be misbranded "[i]f its container is so made, formed, or filled as to be misleading."

31.     Additionally, pursuant to 21 C.F.R. § 100.100:

In accordance with section 403(d) of the act, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading.

(a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:

(1) Protection of the contents of the package;

(2) The requirements of the machines used for enclosing the contents in such package;

(3) Unavoidable product settling during shipping and handling;

(4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

(6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other non-mandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

None of the above safe-harbor provisions apply. Defendant intentionally incorporated non-functional slack-fill in its packaging of the Products in order to mislead the consumers, including Plaintiffs and members of the Class. *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 405 (E.D.N.Y. 2010) ("Misleading consumers is not a valid reason to package a product with slack-fill. *See* 21 C.F.R. § 100.100(a)(1–6).").

32.    The Federal Register makes clear that containers with nonfunctional slack-fill such as the Product containers are misleading. In accordance with the Fair Packaging and Labeling Act (the FPLA), as cited in the Federal Register, "Informed consumers are essential to the fair and efficient functioning of a free market economy. Packages and their labels should enable consumers to obtain accurate information as to the quantity of the contents and should facilitate value comparisons." 58 FR 64123, 64124. The Federal Register emphasizes that incompletely filled containers mislead consumers about package contents and are misleading:

"Packages have replaced the salesman. Therefore, it is urgently required that the information set forth on these packages be sufficiently adequate to apprise the consumer of their contents and to enable the purchaser to make value comparisons among comparable products" (H.R. 2076, 89th Cong., 2d sess., p. 7 (September 23, 1966)). Thus, packaging becomes the "final salesman" between the manufacturer and the consumer, communicating information about the quantity and quality of product in a container. Further, Congress stated (S. Rept. 361, supra at 9) that "Packages only partly filled create a false impression as to the quantity of food which they contain despite the declaration of quantity of contents on the label."

58 FR 64123, 64131.

33.    The Products are misbranded regardless of whether or not Defendant intended to mislead consumers:

FDA advises that the term "misleading" does not require any clear implication regarding intent. Thus, it is not incumbent upon the agency to prove deception in order to deem a food to be misbranded under section 403(d) of the act. Rather, FDA is defining misleading fill as nonfunctional slack-fill. Thus, the appropriate test is whether or not the empty space within a package performs a specific function in relation to the product or its packaging. FDA finds that it is incumbent on manufacturers, knowing the physical characteristics of their products and the capabilities of their packaging equipment, to ensure that any slack-fill in their packages is there to perform one or more valid functions. Slack-fill whose only function is to make the product container larger, and thus to deceive the consumer as to the quantity of food in the container, is nonfunctional slack-fill and, therefore, misleading.

58 FR 64123, 64128.

34.    Food labeling law and regulations of the fifty states and the District of Columbia impose requirements which mirror federal law. California's Business & Professions Code § 12606.2 provides that "No food containers shall be made, formed, or filled as to be misleading." CA B&P Code 12606.2(b). Further, "[a] container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill." CA B&P Code 12606.2(c).

35.    New York Agm. Law § 201 specifically provides that "[f]ood shall be deemed to be misbranded … If its container is so made, formed, colored or filled as to be misleading." Moreover, Part 259.1 of Title 1 of the New York Codes, Rules and Regulations of the State of New York (1 NYCRR § 259.1), incorporates by reference the regulatory requirements for food labeling under the FDCA:

> For the purpose of the enforcement of article 17 of the Agriculture and Markets Law, and except where in conflict with the statutes of this State or with rules and regulations promulgated by the commissioner, the commissioner hereby adopts the current regulations as they appear in title 21 of the *Code of Federal Regulations* (revised as of April 1, 2013) … in the area of food packaging and labeling as follows: … (2) Part 100 of title 21 of the *Code of Federal Regulations* [21 C.F.R. 100 *et seq*.], containing Federal definitions and standards for food packaging and labeling *General* at pages 5-10….

1 NYCRR § 259.1(a)(2).

36.    Similarly, Illinois law incorporates the laws and regulations of the FDA into the Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 ILCS 620/1, *et seq*,: "the IFDCA expressly adopts the FDCA." *McMahon v. Bumble Bee Foods LLC*, 148 F. Supp. 3d 708, 712 (N.D. Ill. 2015). Accordingly, the IFDCA uses identical language as that used in the FDCA in prohibiting misleading containers: "A food is misbranded … (d) If its container is so made, formed, or filled as to be misleading." (410 ILCS § 620/11).

37.    The IFDCA incorporates into Illinois law the federal standard that all non-functional slack-fill is misleading and any non-functional slack-fill renders a product mislabeled:

> Definitions and standards of identity, quality and fill of container and supplements thereto or revisions thereof, adopted under authority of the Federal Food, Drug and Cosmetic Act are the definitions and standards of identity, quality and fill of container in this State except insofar as modified or rejected by regulations promulgated by the Director.

410 ILCS § 620/9.

## Defendant's Products Contain Non-Functional Slack-Fill

38.    Defendant manufactures, markets, advertises and sells its extensive "QUEST®" line of protein powder products across the United States. Defendant markets numerous products under its "QUEST®" brand, including the Products purchased by Plaintiffs. The Products are available at numerous retail and online outlets such as GNC, Vitamin Shoppe, and Amazon.com.

39.    Defendant employed slack-filled packaging containing non-functional slack-fill to mislead customers into believing that they were receiving more Product than they actually were and to trick

consumers into buying the product and overpaying for it. "Most, if not all, labeling is advertising." *United States v. Kordel*, 164 F.2d 913, 915 (7th Cir. 1947), aff'd 335 U.S. 345, 69 S. Ct. 106, 93 L. Ed. 52 (1948), citing *United States v. Research Labs., Inc.*, 126 F.2d 42, 45 (9th Cir. 1942).

40.     Non-functional slack-fill is the difference between the actual capacity of a container and the **volume** of product contained within. Plaintiffs were (and a consumer would reasonably be) misled about the volume of the product contained within the container in comparison to the size of the Products' packaging. The size of the plastic containers in relation to the actual volume of the protein powder contained therein was intended to mislead the consumer into believing the consumer was getting more of the Product than what was actually in the container.

41.     The Products are packaged in plastic containers with an actual capacity of more than twice as much protein powder as they actually contain. See **EXHIBIT B**, showing that there is more empty space than product within each container. Each package of protein powder therefore contains more than 50% non-functional slack-fill.

42.     The packaging of the Products is uniformly non-transparent so that consumers cannot see the actual slack-fill space contained therein. The Products were designed by Defendant to give the impression that there is more protein powder than is actually packaged. *See* **EXHIBIT B**.

43.     The size of the Product containers in relation to the volume of the Products actually contained therein gives the false impression that the consumer is buying more than they are actually receiving.

44.     Because the packaging of the Products consists of a non-transparent plastic, consumers cannot see the non-functional slack-fill contained therein. The photos in **EXHIBIT B** show that the contents of the Products do not fill up the entirety of the plastic containers. In fact, the plastic containers contain significant non-functional slack-fill in violation of federal and state laws.

45.     Competitors' products have substantially less slack-fill and demonstrate that most of the

slack-fill in the Products is not necessary as part of manufacturing the Product.

46.     Plaintiffs and the members of the Class relied on the sizes of the plastic containers to believe that the entire volume of the packaging of the Products would be filled to capacity, particularly since the empty space was purposely concealed by Defendant. Plaintiffs and the members of the Class reasonably relied on the expectation that Defendant's Products would not contain non-functional slack-fill.

**Plaintiffs Were Injured as a Result of Defendant's Misleading and Deceptive Conduct**

47.     Defendant's Product packaging as alleged herein is deceptive and misleading and was designed to increase sales of the Products. Defendant's misrepresentations are part of its systematic Product packaging practice.

48.     Plaintiffs and Class members paid the full price of the Products and received less of what Defendant represented they would be getting due to the non-functional slack-fill in the Products. In order for Plaintiffs and Class members to be made whole, Plaintiffs and Class members would have to receive enough of the protein powder so that there is no non-functional slack-fill or have paid less for the Products. In the alternative, Plaintiffs and members of the Class are damaged by the percentage of non-functional slack-fill relative to the purchase price they paid.

49.     There is no practical reason for the non-functional slack-fill used to package the Products other than to mislead consumers as to the actual volume of the Products being purchased by consumers.

50.     In reliance on Defendant's deception, consumers – including Plaintiffs and members of the proposed Class – have purchased Products that contain non-functional slack-fill. Moreover, and Class members have paid a premium for the Products over other protein powder products sold on the market (see below).

| BRAND | QUANTITY | PRICE | SELLER |
|---|---|---|---|
| QUEST® Protein Powder | 2 lb. | $44.99 | GNC |
| EAS® Whey + Casein Protein, Chocolate | 2 lb. | $16.99 | allstarhealth.com |

| Now Foods® Sprouted Brown Rice Protein | 2 lb. | $15.62 | Jet.com |
|---|---|---|---|

51.     Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art. Misbranding reaches not only false claims, but also those claims that might be technically true, but are still misleading. If any one representation in the labeling is misleading, the entire food is misbranded. No other statement in the labeling cures a misleading statement. "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). Under the FDCA, it is not necessary to prove that anyone was actually misled. Consumer protection laws of the fifty states and the District of Columbia have substantially identical requirements as the FDCA.

52.     Defendant's packaging and advertising of the Misbranded Products violate various state laws against misbranding. Under Illinois law "[a] food is misbranded … (d) If its container is so made, formed, or filled as to be misleading." 410 ILCS § 620/11. New York State law broadly prohibits the misbranding of food in language identical to that found in regulations promulgated pursuant to the FDCA § 403, 21 U.S.C. 343. Under New York Agm. Law § 201, the law specifically provides that "[f]ood shall be deemed to be misbranded … If its container is so made, formed, colored or filled as to be misleading." Similarly, California's Business & Professions Code § 12606.2 provides that "No food containers shall be made, formed, or filled as to be misleading." CA B&P Code 12606.2(b). Further, "[a] container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill." CA B&P Code 12606.2(c).

53.     Slack-fill is defined as the difference between the actual capacity of a container and the volume of product contained therein.

54.     Defendant's Products are misbranded under state consumer protection laws and state food and drug laws because they misled Plaintiffs and Class members about the volume of the Products in comparison to the size of the Products' packaging. The size of the containers in relation to the actual

amount of the Products contained therein gives the false impression that the consumer is buying more than they are actually receiving.

55.      The types of misrepresentations made above would be considered by a reasonable consumer when deciding to purchase the Products. A reasonable person would attach importance to whether Defendant's Products are "misbranded," *i.e.,* not legally salable, or capable of legal possession, and/or contain non-functional slack-fill.

56.      Plaintiffs and Class members did not know, and had no reason to know, that the Products contained non-functional slack-fill.

57.      Defendant's Product packaging was a material factor in Plaintiffs' and Class members' decisions to purchase the Products. In reliance on Defendant's Product packaging, Plaintiffs and Class members believed that they were getting more of the Products than was actually being sold. Had Plaintiffs and Class members known Defendant's Products contained non-functional slack-fill, they would not have bought the Products.

58.      At the point of sale, Plaintiffs and Class members did not know, and had no reason to know, that the Products contained non-functional slack-fill as set forth herein, and would not have bought the Products had they known the truth about them.

59.      Defendant's non-functional slack-fill packaging is misleading and in violation of the FDCA and consumer protection laws of each of the fifty states and the District of Columbia, and the Products at issue are misbranded as a matter of law. Misbranded products cannot be legally manufactured, advertised, distributed, held or sold in the United States. Plaintiffs and Class members would not have bought the Products had they known they were misbranded and illegal to sell or possess.

60.      As a result of Defendant's misrepresentations, Plaintiffs and thousands of others throughout the United States purchased the Products.

61.     Plaintiffs and the Class (defined below) have been damaged by Defendant's deceptive and unfair conduct in that they purchased Products with non-functional slack-fill and paid prices they otherwise would not have paid.

## CLASS ACTION ALLEGATIONS

*The Nationwide Class*

62.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class (the "Class"):

All persons or entities in the United States who made retail purchases of Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

*The California Class*

63.     Plaintiff CAIRO seeks to represent a class consisting of the following subclass (the "California Class"):

All California residents who made retail purchases of Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

*The New York Class*

64.     Plaintiff SQUITIERI seeks to represent a class consisting of the following subclass (the "New York Class"):

All New York residents who made retail purchases of Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

*The Illinois Class*

65.     Plaintiff ADAMS seeks to represent a class consisting of the following subclass (the "Illinois Class"):

66.     All Illinois residents who made retail purchases of Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

CLASS ACTION COMPLAINT

67.    The proposed Classes exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned

68.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through the appropriate discovery, Plaintiffs believe that there are thousands of members in the proposed Class. Other members of the Class may be identified from records maintained by Defendant and may be notified of the pendency of this action by mail, or by advertisement, using the form of notice similar to that customarily used in class actions such as this.

69.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendant's wrongful conduct.

70.    Plaintiffs will fairly and adequately protect the interests of the members of the Class in that Plaintiffs have no interests antagonistic to those of the other members of the Class. Plaintiffs have retained experienced and competent counsel.

71.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the Class to individually seek redress for the wrongful conduct alleged herein. If Class treatment of these claims were not available, Defendant would likely unfairly receive millions of dollars or more in improper charges.

72.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the common questions of law fact to the Class are:

    i.    Whether Defendant labeled, packaged, marketed, advertised and/or sold Products to Plaintiffs and Class members, using false, misleading and/or deceptive packaging and labeling;

    ii.    Whether Defendant's actions constitute violations of 21 U.S.C. § 343(d);

    iii.    Whether Defendant omitted and/or misrepresented material facts in connection with the labeling, packaging, marketing, advertising and/or sale of Products;

    iv.    Whether Defendant's labeling, packaging, marketing, advertising and/or selling of Products constituted an unfair, unlawful or fraudulent practice;

    v.    Whether the packaging of the Products during the relevant statutory period constituted unlawful non-functional slack-fill;

    vi.    Whether, and to what extent, injunctive relief should be imposed on Defendant to prevent such conduct in the future;

    vii.    Whether the members of the Class have sustained damages as a result of Defendant's wrongful conduct;

    viii.    Whether Defendant purposely chose non-transparent plastic Product containers so that Plaintiffs and Class members would not be able to see the amount of slack-fill contained in the Products;

    ix.    The appropriate measure of damages and/or other relief;

    x.    Whether Defendant has been unjustly enriched by their scheme of using false, misleading and/or deceptive labeling, packaging or misrepresentations, and;

    xi.    Whether Defendant should be enjoined from continuing its unlawful practices.

    73.    The class is readily definable, and prosecution of this action as a Class action will reduce the possibility of repetitious litigation. Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a Class action.

74.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

75.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

76.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

77.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

78.     Defendant's conduct is generally applicable to the Class as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT,

**(Cal. Civ. Code § 1750, *et seq.*)**

79.     Plaintiff CAIRO re-alleges and incorporates herein by reference the allegations contained in the preceding paragraphs one (1) through seventy-eight (78), as if fully set forth herein verbatim.

80.     This claim is brought on behalf of Plaintiff CAIRO, individually, and all members of the California Class against Defendant, for Defendants' violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

81.     Plaintiff CAIRO and California Class members are consumers who purchased the Products for personal, family or household purposes. Plaintiff CAIRO and the California Class members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d). Plaintiff CAIRO and the California Class members are not sophisticated experts with independent knowledge of corporate branding, labeling and packaging practices.

82.     Products that Plaintiff CAIRO and other California Class members purchased from Defendants were "goods" within the meaning of Cal. Civ. Code § 1761(a).

83.     Defendants' actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

84.     Defendants violated federal and California law because the Products contain non-functional slack-fill and because they are intentionally packaged to prevent the consumer from being able to fully see their contents.

85.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(5) of the CLRA, because Defendants'

conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it misrepresents that the Products have quantities which they do not have.

86. Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(9), because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it advertises goods with the intent not to sell the goods as advertised.

87. Plaintiff CAIRO and the California Class members are not sophisticated experts about the corporate branding, labeling and packaging practices. Plaintiff CAIRO and the California Class acted reasonably when they purchased the Products based on their belief that Defendants' representations were true and lawful.

88. Plaintiff CAIRO and the California Class suffered injuries caused by Defendants because (a) they would not have purchased the Products on the same terms absent Defendants' illegal and misleading conduct as set forth herein; (b) they paid a price premium for the Products due to Defendants' misrepresentations and deceptive packaging with nonfunctional slack-fill; and (c) the Products did not have the quantities as promised.

89. On or about October 26, 2016, prior to filing this action, a CLRA notice letter was served on Defendants which complies in all respects with California Civil Code § 1782(a). Plaintiff CAIRO sent QUEST NUTRITION, LLC, on behalf of herself and the proposed Class, a letter via certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom. A true and correct copy of Plaintiff CAIRO's letter is attached hereto as **EXHIBIT E**.

90. Wherefore, Plaintiff CAIRO seeks damages, restitution, and injunctive relief for these violations of the CLRA.

## COUNT II.

### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW,
#### (California Business & Professions Code §§ 17200, *et seq.*)

91.    Plaintiff CAIRO re-alleges and incorporates herein by reference the allegations contained in the preceding paragraphs one (1) through seventy-eight (78), as if fully set forth herein verbatim.

92.    This claim is brought on behalf of Plaintiff CAIRO, individually, and all members of the California Class against Defendant, for Defendants' violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.

93.    The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

94.    Defendants violated federal and California law because the Products contain non-functional slack-fill and because they are intentionally packaged to prevent the consumer from being able to fully see their contents.

95.    Defendants' business practices, described herein, violated the "unlawful" prong of the UCL by violating Section 403(r) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. 343(d), California Health & Safety Code § 110690, the CLRA, and other applicable law as described herein.

96.    Defendants' business practices, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendants' advertising is of no benefit to consumers, and its failure to comply with the FDCA and parallel California labeling requirements and deceptive advertising concerning the quantity of the Products offends the public policy advanced by the FDCA to ensure that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A).

97.    Defendants violated the "fraudulent" prong of the UCL by misleading Plaintiff CAIRO and the California Class to believe that the Products contained more contents than they actually do and

that such packaging and labeling practices were lawful, true and not intended to deceive or mislead the consumers.

98.    Plaintiff CAIRO and the California Class members are not sophisticated experts about the corporate branding, labeling, and packaging practices of the Products. Plaintiff CAIRO and the California Class acted reasonably when they purchased the Products based on their belief that Defendants' representations were true and lawful.

99.    Plaintiff CAIRO and the California Class lost money or property as a result of Defendants' UCL violations because (a) they would not have purchased the Products on the same terms absent Defendants' illegal conduct as set forth herein, or if the true facts were known concerning Defendants' representations; (b) they paid a price premium for the Products due to Defendants' misrepresentations; and (c) the Products did not have the quantities as promised.

## COUNT III.

### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW,
### (California Business & Professions Code §§ 17500, *et seq.*)

100.    Plaintiff CAIRO re-alleges and incorporates herein by reference the allegations contained in the preceding paragraphs one (1) through seventy-eight (78), as if fully set forth herein verbatim.

101.    This claim is brought on behalf of Plaintiff CAIRO, individually, and all members of the California Class against Defendant, for Defendants' violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

102.    Under the FAL, the State of California makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

103.   Defendants engaged in a scheme of offering misbranded Products for sale to Plaintiff CAIRO and the California Class members by way of packaging the Products with nonfunctional slack-fill. Such practice misrepresented the content and quantity of the misbranded Products. Defendants' advertisements and inducements were made in California and come within the definition of advertising as contained in Bus. & Prof. Code § 17500, *et seq.* in that the product packaging was intended as inducements to purchase Defendants' Products. Defendants knew that these statements were unauthorized, inaccurate, and misleading.

104.   Defendants violated federal and California law because the Products contain non-functional slack-fill and because they are intentionally packaged to prevent the consumer from being able to fully see their contents.

105.   Defendants violated § 17500, *et seq.* by misleading Plaintiff CAIRO and the California Class to believe that the packaging with nonfunctional slack-fill made about the Products were true as described herein.

106.   Defendants knew or should have known, through the exercise of reasonable care that the Products were and continue to be misbranded, and that their representations about the quantity of the Products were untrue and misleading.

107.   Plaintiff CAIRO and the California Class lost money or property as a result of Defendants' FAL violations because (a) they would not have purchased the Products on the same terms absent Defendants' illegal conduct as set forth herein, or if the true facts were known concerning Defendants' representations; (b) they paid a price premium for the Products due to Defendants' misrepresentations; and (c) the Products did not have the characteristics, benefits, or quantities as promised.

## COUNT IV.

**INJUNCTION FOR VIOLATIONS OF THE NEW YORK DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**(New York General Business Law § 349)**

108.    Plaintiff SQUITIERI re-alleges and incorporates herein by reference the allegations contained in the preceding paragraphs one (1) through seventy-eight (78), as if fully set forth herein verbatim.

109.    This claim is brought on behalf of Plaintiff SQUITIERI, individually, and all members of the New York Class against Defendant, for an injunction for Defendant's violations of New York's Deceptive Acts or Practices Law, General Business Law ("NY GBL") § 349.

110.    NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

111.    Under the New York Gen. Bus. Code § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 . . . claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

112.    The practices employed by Defendant, whereby Defendant advertised, promoted, marketed and sold their Products in packaging resulting in non-functional slack-fill are unfair, deceptive and misleading and are in violation of the NY GBL § 349. Moreover, New York State law broadly prohibits the misbranding of foods in language identical to that found in regulations promulgated pursuant to the FDCA § 403, 29 U.S.C. 343(d). Under New York Agm. Law § 201, "[f]ood shall be deemed to be misbranded … If its container is so made, formed, colored or filled as to be misleading."

113.    The foregoing deceptive acts and practices were directed at consumers.

114.    Defendant should be enjoined from packaging their Products with non-functional slack-fill as described above pursuant to NY GBL § 349, New York Agm. Law § 201, and the FDCA, 21 U.S.C. § 343(d).

1    115.    Plaintiff SQUITIERI, on behalf of himself and all others similarly situated, respectfully

2    demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys'

3    fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

4

5                                        **COUNT V.**

6    **DAMAGES FOR VIOLATIONS OF THE NEW YORK DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
     **(New York General Business Law § 349)**

7

8    116.    Plaintiff SQUITIERI re-alleges and incorporates herein by reference the allegations

9    contained in the preceding paragraphs one (1) through seventy-eight (78), as if fully set forth herein

10   verbatim.

11   117.    This claim is brought on behalf of Plaintiff SQUITIERI, individually, and all members of

12   the New York Class against Defendant for violations of NY GBL § 349.

13   118.    Any person who has been injured by reason of any violation of NY GBL § 349 may bring

14   an action in her own name to enjoin such unlawful act or practice, an action to recover her actual damages

15   or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the

16   award of damages to an amount not to exceed three times the actual damages up to one thousand dollars,

17   if the court finds the defendant willfully or knowingly violated this section. The court may award

18   reasonable attorney's fees to a prevailing plaintiff.

19

20   119.    By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and

21   practices by misbranding their Products as seeming to contain more in the packaging than is actually

22   included.

23

24   120.    The practices employed by Defendant, whereby Defendant advertised, promoted, marketed

25   and sold its Products in packages resulting in non-functional slack-fill are unfair, deceptive and misleading

26   and are in violation of the NY GBL § 349, New York Agm. Law § 201 and the FDCA, 21 U.S.C. § 343(d)

27   in that said Products are misbranded.

28   121.    The foregoing deceptive acts and practices were directed at consumers.

122.    Plaintiff SQUITIERI and the other Class members suffered a loss as a result of Defendant's deceptive and unfair trade acts. Specifically, as a result of Defendant's deceptive and unfair acts and practices, Plaintiff SQUITIERI and the other Class members suffered monetary losses associated with the purchase of Products, i.e., receiving less than the capacity of the packaging due to approximately 50% non-functional slack-fill in the Products. In order for Plaintiff SQUITIERI and Class members to be made whole, they need to receive either the price premium paid for the Products or a refund of the purchase price of the Products equal to the percentage of non-functional slack-fill in the Products.

**COUNT VI.**

**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §§ 350 AND 350-a(1)**
**(FALSE ADVERTISING)**

123.    Plaintiff SQUITIERI re-alleges and incorporates herein by reference the allegations contained in the preceding paragraphs one (1) through seventy-eight (78), as if fully set forth herein verbatim.

124.    This claim is brought on behalf of Plaintiff SQUITIERI, individually, and all members of the New York Class against Defendant.

125.    Defendant has been and/or is engaged in the "conduct of … business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

126.    New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

127.    Defendant caused to be made or disseminated through New York, through advertising, marketing and other publications, statements that were untrue or misleading, and that were known, or

which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers and New York Class.

128.    Defendant's affirmative misrepresentations and misrepresentations by way of omission, as described in this Complaint, were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the products were and continue to be exposed to Defendant's material misrepresentations.

129.    Defendant has violated N.Y. Gen. Bus. Law § 350 because the misrepresentations and/or omissions regarding the Products, as set forth above, were material and likely to deceive a reasonable consumer.

130.    Plaintiff SQUITIERI and members of the New York Class have suffered an injury, including the loss of money or property, as a result of Defendant's false and misleading advertising. In purchasing the Defective Products, Plaintiff SQUITIERI and members of the New York Class relied on the misrepresentations and/or omissions relating to the quantity of the Products that was food and not non-functional slack-fill. Those representations were false and/or misleading because the Products contain substantial hidden non-functional slack-fill. Had the New York Class known this, they would not have purchased their Defective Products or paid as much for them.

131.    Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff SQUITIERI and members of the New York Class seek monetary damages (including actual damages and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a(1)), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**COUNT VII.**

**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**(815 ILCS § 505/1, *et seq*.)**

132.    Plaintiff ADAMS re-alleges and incorporates herein by reference the allegations contained in the preceding paragraphs one (1) through seventy-eight (78), as if fully set forth herein verbatim.

133.    This claim is brought on behalf of Plaintiff ADAMS, individually, and all members of the Illinois Class against Defendant, for Defendant's violations of the Illinois Consumer Fraud And Deceptive Business Practices Act, 815 ILCS § 505, *et seq.* (the "ICFA").

134.    Plaintiff ADAMS and Illinois Class members are consumers who purchased the Products for personal, family or household purposes. Plaintiff ADAMS and the Illinois Class members are "consumers" as that term is defined by the ICFA, 815 ILC § 505/1(e) as they purchased the Products for personal consumption or of a member of their household and not for resale.

135.    Products that Plaintiff ADAMS and other Illinois Class members purchased from Defendant were "merchandise" within the meaning of the ICFA, 815 ILC § 505/1(b).

136.    Under Illinois law, 815 ILC § 505/2, "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." By engaging in the conduct set forth herein, Defendant violated and continues to violate § 505/2 of the ICFA, because Defendant's conduct constitutes unfair methods of competition and unfair or deceptive acts or practices, in that it misrepresents that the Products have quantities which they do not have.

137.    Defendant's packaging with nonfunctional slack-fill constitutes a deceptive act or practice under the ICFA because they are intentionally packaged to prevent the consumer from being able to fully see their contents.

138.     Defendant intended that Plaintiff ADAMS and other members of the Illinois Class rely on their deceptive act or practice.

139.     Defendant's deceptive act or practice occurred in the course of trade or commerce. "The terms "trade" and "commerce" mean the advertising, offering for sale, sale, or distribution of any services and any property…." 815 ILC § 505/1(f). Defendant's deceptive act or practice occurred in the advertising, offering for sale, sale, or distribution of the Products.

140.     Plaintiff ADAMS and the Illinois Class suffered actual damage proximately caused by Defendant because (a) they would not have purchased the Products on the same terms absent Defendant's illegal and misleading conduct as set forth herein, or if the true facts were known concerning Defendant's representations; (b) they paid a price premium for the Products due to Defendant's misrepresentations and deceptive packaging with nonfunctional slack-fill above the fair value of the Products; and (c) the Products did not have the characteristics, benefits, or quantities as promised.

141.     Wherefore, Plaintiff ADAMS seeks damages, restitution, and injunctive relief for these violations of the ICFA, and any other relief that the Court deems proper for the violations of the ICFA set forth above.

## COUNT VIII.

## DAMAGES FOR VIOLATIONS OF THE ILLINOIS FOOD, DRUG, AND COSMETIC ACT
(410 ILCS § 620/1, *et seq.*)

142.     Plaintiff ADAMS re-alleges and incorporates herein by reference the allegations contained in the preceding paragraphs one (1) through seventy-eight (78), as if fully set forth herein verbatim.

143.     This claim is brought on behalf of Plaintiff ADAMS, individually, and all members of the Illinois Class against Defendant, for Defendant's violations of the Illinois Food, Drug, And Cosmetic Act 410 ILCS § 620/1, *et seq.* (the "IFDCA").

144.    Products that Plaintiff ADAMS and other Illinois Class members purchased from Defendant were "food" within the meaning of the ICFA, "'Food' means (1) articles used for food or drink for man or other animals…" 815 ILCS § 620/2.3.

145.    The false representations of quantity conveyed by Defendant's oversized and under-filled containers are prohibited under Illinois law: "A food is misbranded … (d) If its container is so made, formed, or filled as to be misleading." 410 ILCS § 620/11.

146.    Defendant's Products are misbranded because they are formed to be misleading and have misleading nonfunctional slack-fill.

147.    The IFDCA incorporates into Illinois law the federal standard that all non-functional slack-fill is misleading and any non-functional slack-fill renders a product mislabeled:

> Definitions and standards of identity, quality and fill of container and supplements thereto or revisions thereof, adopted under authority of the Federal Food, Drug and Cosmetic Act are the definitions and standards of identity, quality and fill of container in this State except insofar as modified or rejected by regulations promulgated by the Director.

410 ILCS § 620/9.

148.    By engaging in the conduct set forth herein, Defendant violated and continues to violate § 620/9 of the IFDCA, because Defendant's packaging contains non-functional slack-fill that does not serve any legitimate manufacturing purpose.

149.    Pursuant to § 620/3.1-3.3 of the IFDCA, the manufacture, misbranding, sale, purchase, delivery, and receipt of mislabeled products such as the Products is prohibited in Illinois:

> Sec. 3. The enumerated acts in Sections 3.1 through 3.21 and the causing thereof are prohibited in this State.

> Sec. 3.1. The manufacture, sale or delivery, holding or offering for sale of any food, drug, device or cosmetic that is adulterated or misbranded.

> Sec. 3.2. The adulteration or misbranding of any food, drug, device or cosmetic.

> Sec. 3.3. The receipt in commerce of any food, drug, device or cosmetic that is adulterated or misbranded and the delivery or proffered delivery thereof for pay or otherwise.

410 ILCS § 620/31.-3.3.

150.    All of the Products are mislabeled due to large amounts of slack-fill and are therefore illegal to manufacture, misbrand, sell, purchase, deliver, and receive in Illinois.

151.    Defendant's packaging renders its Products illegal to sell or buy and legally worthless.

152.    By engaging in the conduct set forth herein, Defendant violated and continues to violate § 620/3 of the IFDCA, because Defendant's packaging contains non-functional slack-fill that does not serve any legitimate manufacturing purpose.

153.    Defendant intended that Plaintiff ADAMS and other members of the Illinois Class rely on their deceptive slack-fill in deciding to purchase the Products for the advertised high price.

154.    Plaintiff ADAMS and the Illinois Class suffered actual damage proximately caused by Defendant because (a) they would not have purchased the Products on the same terms absent Defendant's illegal and misleading conduct as set forth herein, or if the true facts were known concerning the illegality of the Products; (b) they paid a price premium for the Products due to Defendant's misrepresentations and deceptive packaging with nonfunctional slack-fill above the fair value of the Products; and (c) the Products did not have the characteristics, benefits, or quantities as promised.

155.    Plaintiff ADAMS and the class have a viable claim under the IFDCA because Defendant's violations of the IFDCA are deceptive and mislead consumers and thereby violate 815 ILC § 505/10.

156.    Wherefore, Plaintiff ADAMS seeks damages, restitution, and injunctive relief for these violations of the IFDCA, and any other relief that the Court deems proper..

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against Defendant as follows:

(A)    For an Order certifying the nationwide Class and under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent members of the Class;

(B)     For an Order declaring the Defendant's conduct violates the statutes referenced herein;

(C)     For an Order finding in favor of Plaintiffs and members of the Class;

(D)     For compensatory and punitive damages to be determined by the Court and/or jury;

(E)     For prejudgment interest on all amounts awarded;

(F)     For an Order of restitution and all other forms of equitable monetary relief;

(G)     For injunctive relief to repackage the Products without non-functional slack-fill as pleaded or as the Court may deem proper;

(H)     For an Order awarding Plaintiffs and members of the Class their reasonable attorneys' fees and expenses and costs of suit; and

(I)     For such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs, individually and on behalf of all others similarly situated, hereby demand a jury trial on all claims so triable.

DATED: January 25, 2017            **Respectfully submitted by,**

                                   */s/   Benjamin M. Lopatin, Esq.*
                                   Benjamin M. Lopatin, Esq. (Cal. Bar No. 281730)
                                   Email: blopatin@elplawyers.com
                                   EGGNATZ, LOPATIN & PASCUCCI, LLP
                                   1425 Irving Street
                                   San Francisco, CA 94122
                                   Tel: (415) 379-4612
                                   Fax: (415) 520-2262

                                   CK Lee, *to be admitted pro hac vice*
                                   30 East 39th Street, Second Floor
                                   New York, NY 10016
                                   Tel.: 212-465-1188
                                   Fax: 212-465-1181
                                   cklee@leelitigation.com

                                   Attorneys for Plaintiffs and the Proposed Class

# EXHIBIT A

Below are images of the product in all flavors.





# EXHIBIT B

There are about 5 ½ inches of air in each container, but only 5 ¼ inches of product.




APPROXIMATE LINE OF FILL

.





# EXHIBIT C

The QUEST® and EPIQ™ containers are the same size, and even have interchangeable lids.









The EPIQ™ container has 7 ½ inches of protein powder, 2 ¼ inches more than the QUEST® container.



APPROXIMATE LINE OF FILL



EXHIBIT C

# EXHIBIT D

The EAS® container is smaller in every dimension than the QUEST® container and contains the same amount of product. Both containers are manufactured by Priority Plastics Inc.



APPROXIMATE
LINE OF FILL

EXHIBIT D



APPROXIMATE LINE OF FILL

APPROXIMATE LINE OF FILL





# EXHIBIT E

# LEE LITIGATION GROUP, PLLC

30 EAST 39TH STREET, SECOND FLOOR
NEW YORK, NY 10016
TEL: 212-465-1180
FAX: 212-465-1181
INFO@LEELITIGATION.COM

WRITER'S DIRECT:      212-465-1188
                      cklee@leelitigation.com

October 26, 2016

*VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED*

Quest Nutrition, LLC
c/o CORP2000
32 W. Loockerman St., Ste. 107
DOVER, DE 19904

Re:    *Demand Letter re:*      Quest® Protein Powder (Cookies & Cream)
                                Quest® Protein Powder (Salted Caramel)
                                Quest® Protein Powder (Banana Cream)
                                Quest® Protein Powder (Chocolate Milkshake)
                                Quest® Protein Powder (Vanilla Milkshake)
                                Quest® Protein Powder (Peanut Butter)
                                Quest® Protein Powder (Strawberries & Cream)
                                Quest® Protein Powder (Multi-Purpose Mix)
                          (together, the "Products")

To Whom It May Concern:

This demand letter serves as a notice and demand for corrective action on behalf of my client, N.F.N. Cairo and all other persons similarly situated, arising from violations of numerous provisions of California law including: the Unfair Competition Law (California Business & Professions Code §§ 17200 *et seq.*); the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5) and (9); the False Advertising Law (California Business & Professions Code §§ 17500 *et seq.*); and the California Fair Packaging and Labeling Act (Cal. Bus. & Prof. Code §§ 12606, 12606.2). This demand letter serves as notice pursuant to state laws concerning your deceptive and misleading Product packaging.

You have participated in the manufacture, marketing and sale of the QUEST® Protein Powder Products. The Products are packaged in containers made, formed or filled as to be misleading, contain non-functional slack fill and violate the California State laws that rely on the Federal Food Drug & Cosmetic Act ("FDCA") Section 403 (21 U.S.C. 343). As a result, consumers are misled as to the volume of the Products.

Cairo, a resident of California, purchased the 2 lb. QUEST® Protein Powder Product in the Salted Caramel flavor in reliance on the packaging and is acting on behalf of a class defined as all persons in California who purchased the Products (hereafter, the

"Class"). The Product was less than half filled with protein powder and Cairo was thereby denied the full quantity of protein powder that she had paid for.

Cal. Bus. & Prof. Code §§ 12606.2 prohibits misleading nonfunctional slack-fill and reads:

> …

> (b) No food containers shall be made, formed, or filled as to be misleading.

> (c) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill. Slack fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack fill is the empty space in a package that is filled to substantially less than its capacity for reasons other than any one or more of the following:

> …

> (e) This section shall be interpreted consistent with the comments by the United States Food and Drug Administration on the regulations contained in Section 100.100 of Title 21 of the Code of Federal Regulations, interpreting Section 403(d) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. Sec. 343(d)), as those comments are reported on pages 64123 to 64137, inclusive, of Volume 58 of the Federal Register.

The Federal Register makes clear that containers with nonfunctional slack-fill such as the Product containers are misleading. In accordance with the Fair Packaging and Labeling Act (the FPLA), as cited in the Federal Register, "Informed consumers are essential to the fair and efficient functioning of a free market economy. Packages and their labels should enable consumers to obtain accurate information as to the quantity of the contents and should facilitate value comparisons." 58 FR 64123, 64124. The Federal Register emphasizes that incompletely filled containers mislead consumers about package contents and are misleading:

> "Packages have replaced the salesman. Therefore, it is urgently required that the information set forth on these packages be sufficiently adequate to apprise the consumer of their contents and to enable the purchaser to make value comparisons among comparable products" (H.R. 2076, 89th Cong., 2d sess., p. 7 (September 23, 1966)). Thus, packaging becomes the "final salesman" between the manufacturer and the consumer, communicating information about the quantity and quality of

product in a container. Further, Congress stated (S. Rept. 361, supra
at 9) that "Packages only partly filled create a false impression as to
the quantity of food which they contain despite the declaration of
quantity of contents on the label."

58 FR 64123, 64131.

Quest® 2 lb. Protein Powder Product containers are only partly filled, misleading
consumers about the quantity of product they contain.[1] Most of the empty space in each
container is nonfunctional slack-fill that does not serve a legitimate manufacturing
purchase. Competitors' products have substantially less slack-fill and demonstrate that at
least most of the slack-fill in the Products is not necessary as part of manufacturing the
Product.

Quest® 2 lb. Protein Powder Products are sold in containers more than 60%
larger than competitors' 2 lb. protein powder containers, such as the containers of EAS®
Whey + Casein Protein Powder.[2] Other competitors' products, such as EPIQ™ Isolate
Protein Powder, include 65% more protein powder in containers the same size as
containers of Quest® Products.[3] If Quest® Product containers held 65% more protein,
like the EPIQ™ containers, they would have less than 20% slack, like the EAS
containers.[4] Slack-fill in excess of 20% is clearly non-functional slack-fill based on
competitors' products.

The Products are misbranded regardless of whether or not Quest® intended to
mislead consumers. Intent to mislead is not an element of the California Fair Packaging
and Labeling Act:

> FDA advises that the term "misleading" does not require any clear
> implication regarding intent. Thus, it is not incumbent upon the
> agency to prove deception in order to deem a food to be misbranded
> under section 403(d) of the act. Rather, FDA is defining misleading
> fill as nonfunctional slack-fill. Thus, the appropriate test is whether
> or not the empty space within a package performs a specific function
> in relation to the product or its packaging. FDA finds that it is
> incumbent on manufacturers, knowing the physical characteristics
> of their products and the capabilities of their packaging equipment,

---

[1] A Quest® 2 lb. Protein Powder Product contains mostly empty space. The product in the container
occupies less than half of the total available space – only 5.25 inches, compared to 5.5 inches of air.
[2] Quest® 2 lb. Protein Powder Products are sold in containers 11 inches tall (with 10.75 inches of vertical
space available internally) and 17.25 inches in circumference, giving them 255 cubic inches of capacity.
EAS® Whey + Casein Protein Powder is sold in containers that are 8.5 inches tall (with 8.25 inches of
vertical space available internally) and 15.5 inches in circumference, giving them 158 cubic inches of
capacity. (255-158) / (158) = 61.4%. *See* **Exhibit B**.
[3] EPIQ™ Isolate Protein Powder is sold in 3.3 lb. batches in containers of the same size as the Quest® 2 lb.
Protein Powder Products. (3.3-2) / (2) = 65%. *See* **Exhibit C**.
[4] *See* **Exhibit B**.

> to ensure that any slack-fill in their packages is there to perform one or more valid functions. Slack-fill whose only function is to make the product container larger, and thus to deceive the consumer as to the quantity of food in the container, is nonfunctional slack-fill and, therefore, misleading.

58 FR 64123, 64128.

Intent to mislead is not an element of the California Unfair Competition Law[5] or of the Consumers Legal Remedies Act except as specifically enumerated in § 1770(a)(9).

Protein powder supplements are covered under the California Fair Packaging and Labeling Act: "dietary supplements are food and, as such, must comply with section 403(d) of the act." 58 FR 64123, 64134.

Display requirements do not justify slack-fill: "although increasing the size of a package may improve the stackability and display characteristics of the container, if such package contains nonfunctional slack-fill, the food is misbranded." 58 FR 64123, 64134.

The Products are misbranded regardless of any disclosures about contents settling and regardless of whether or not weight is labelled accurately, because "label statements cannot correct nonfunctional or misleading fill." 58 FR 64123, 64129.

To cure the defects described above, we demand that you (i) cease and desist from continuing to package the Products with non-functional slack fill; (ii) issue an immediate recall on any Products with non-functional slack fill; and (iii) make full restitution to all purchasers throughout the United States of all purchase money obtained from sales thereof.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to the following:

(i)     All documents concerning the manufacture, labeling and packaging process for the Products;

(ii)    All communications with the U.S. Food and Drug Administration concerning the product development, labeling, packaging, marketing and sales of the Products;

(iii)   All documents concerning the advertisement, marketing, or sale of the Products; and

(iv)    All communications with customers concerning complaints or comments concerning the Products.

---

[5] *In re Tobacco II Cases*, 46 Cal. 4th 298, 320-1 (2009).

We are willing to negotiate to attempt to resolve the demands asserted in this letter. If you wish to enter into such discussions, please contact me immediately. If I do not hear from you promptly, I will conclude that you are not interested in resolving this dispute short of litigation. If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

Very truly yours,

C.K. Lee, Esq.

EXHIBIT E

# EXHIBIT A

There are about 5 ½ inches of air in each container, but only 5 ¼ inches of product.







# EXHIBIT B

The EAS® container is smaller in every dimension than the QUEST® container and contains the same amount of product. Both containers are manufactured by Priority Plastics Inc.



APPROXIMATE
LINE OF FILL

EXHIBIT E



APPROXIMATE LINE OF FILL

APPROXIMATE LINE OF FILL



# EXHIBIT C

QUEST® and EPIQ™ containers are the same size, and even have interchangeable lids.



